# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MR. DAVID POE, | CASE NO. 1:07-cv-00413-SKO PC |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (Doc. 36) |
| SGT. HUCKABAY, et al., | |
| Defendants. | |

Plaintiff Mr. David Poe ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at Kern Valley State Prison ("KVSP") in Delano, California. The events described in Plaintiff's complaint took place when Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California. Plaintiff is suing under Section 1983 for the violation of his rights under the First, Eighth, and Fourteenth Amendments. For the reasons set forth below, the Court finds that Plaintiff's third amended complaint states some cognizable claims. This action will proceed on Plaintiff's cognizable claims and the remaining claims will be dismissed without leave to amend.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although the Court must accept as true all factual allegations contained in a complaint, the Court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.    Background**

   **A.    Procedural Background**

Plaintiff filed the original complaint in this action on February 28, 2007. (Doc. #1.) On December 10, 2008, Plaintiff's original complaint was screened by the Court pursuant to 28 U.S.C. § 1915A. (Doc. #20.) The Court found that Plaintiff's original complaint failed to state any cognizable claims. Plaintiff's original complaint was dismissed and Plaintiff was given leave to file an amended complaint which cured the deficiencies in his claims. On June 1, 2009, Plaintiff filed his first amended complaint. (Doc. #28.) On July 14, 2009, Plaintiff filed a second amended complaint without being ordered to do so, and without first seeking leave from the Court to do so. (Doc. #32.) On November 30, 2009, the Court screened Plaintiff's second amended complaint.

(Doc. #33.) The Court found that Plaintiff's second amended complaint stated some cognizable claims and ordered Plaintiff either to file a third amended complaint or to notify the Court that he wished to proceed only on the cognizable claims. (Doc. #33.) On November 30, 2009, Plaintiff filed his third amended complaint. (Doc. #36.) This action proceeds on Plaintiff's third amended complaint.

### B.     Factual Background

On September 7, 2005, Plaintiff was sweeping the floor at PVSP. (Compl. ¶¶ 1-2.) Plaintiff alleges that he was in an authorized location and in compliance with all prison rules and regulations at the time. (Compl. ¶ 3.) However, Plaintiff was startled when he suddenly heard the rush of feet pounding the pavement behind him. (Compl. ¶ 5.) Plaintiff reflexively responded in a defensive manner by quickly turning around and swinging blindly toward the sound of rushing feet, being under the impression that he was about to be assaulted by violent inmates. (Compl. ¶¶ 6-7.) However, Plaintiff discovered that he had actually struck officer Fountain. (Compl. ¶ 9.) Officer D. Do ordered Plaintiff to get on the ground. (Compl. ¶ 9.) Plaintiff was handcuffed by officers Do and Fountain, and officers D. Huckabay[1], R. Milan, J.M. Mattingly, Franco, Soares, M. Jiminez, T. Bullock, K. Witt, D. Rose, Carminati, White, and Deathridge escorted Plaintiff away. (Compl. ¶ 10.)

Plaintiff describes the escort as a "gauntlet run," whereby Huckabay, Milan, Mattingly, Franco, Soares, Jiminez, Bullock, Witt, Rose, Carminati, White, and Deathridge punched, kicked, slapped, spit on, pushed, and shoved Plaintiff as he was escorted outside the building. (Compl. ¶ 10.) As the escort left the dayroom area, Huckabay told his subordinate officers to "Bust[Plaintiff's] head on the steel door!!" (Compl. ¶ 12.) Plaintiff was then rammed head-first into a steel door. (Compl. ¶ 13.) As the escort proceeded, the officers continued to beat Plaintiff with their batons, fists, and feet. (Compl. ¶ 15.)

Plaintiff was brought "out of AFB1 outside in front of the cell block" and sergeant Galvan and other unidentified John Doe officers joined the escort group and participated in attacking Plaintiff. (Compl. ¶ 16.) Plaintiff was thrown to the ground and Huckabay ordered that leg restraints

---

[1] Plaintiff's complaint uses two different spellings for Defendant Huckabay's name: 'Huckabay' and 'Huckaby.' It is unclear which spelling is correct. The Court will use 'Huckabay.'

3

be placed on Plaintiff and a gurney be brought out. (Compl. ¶ 19.) Plaintiff was picked up by Franco and Milan and thrown to the ground. (Compl. ¶ 19.) Restraints were placed on Plaintiff's ankles. (Compl. ¶ 19.) Franco began standing on top of the leg restraints "intentionally causing extreme unnecessary pressure pain to plaintiff's ankles. . . ." (Compl. ¶ 19.) Lieutenant J.L. Scott arrived and observed the continued beating of Plaintiff. (Compl. ¶ 20.) Scott then tossed Plaintiff onto the gurney and Plaintiff was transported to the medical clinic. (Compl. ¶ 21.) Officers continued to attack Plaintiff while Plaintiff was being transported. (Compl. ¶ 21.)

Licensed vocational nurse D. Hall conducted a video taped examination of Plaintiff. (Compl. ¶ 24.) Plaintiff complains that Hall only documented some of the many injuries suffered by Plaintiff in an attempt to cover up the misconduct committed by the other officers. (Compl. ¶ 27.) Plaintiff was transported to the administrative segregation unit ("ASU"). (Compl. ¶ 28.) During the transport, officer Soares struck Plaintiff several times in his right eye. (Compl. ¶ 28.) Plaintiff was examined by licensed vocational nurse J. Carr when he arrived at ASU. (Compl. ¶ 29.) Plaintiff again complains that numerous injuries went undocumented as part of a conspiracy to cover up officer misconduct. (Compl. ¶ 29.)

While housed in ASU, Plaintiff's cell mate begged nursing staff to provide medical care for Plaintiff's serious injuries. (Compl. ¶ 30.) Plaintiff complains that he did not receive any medical treatment until six days after the attack took place. (Compl. ¶ 33.)

Captain E. H. Beels, lieutenant W.K. Myers, and Huckabay authored a fraudulent disciplinary action report describing the September 7, 2005 incident. (Compl. ¶ 38.) Plaintiff, however, does not explain how the report was fraudulent.

**III.   Discussion**

    **A.   Eighth Amendment Claims**

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective

4

requirement that the deprivation is "sufficiently serious," Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind," Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### 1. Excessive Force

Plaintiff claims that his Eighth Amendment rights were violated when Defendants used excessive force against him after Plaintiff accidentally struck a correctional officer. Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted. Whitley, 475 U.S. at 321. Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are

///

1 needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322
2 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

3       Plaintiff claims that Defendants viciously attacked Plaintiff after Plaintiff accidentally struck
4 officer Fountain. While some degree of disciplinary response may have been reasonable given
5 Plaintiff's actions, the amount of force alleged was clearly excessive and served no legitimate
6 penological purpose. Plaintiff had submitted to the correctional officers' authority, yet officers
7 continued to brutally attack Plaintiff, causing serious injury. Plaintiff states cognizable claims
8 against PVSP officials who participated in the attack. Plaintiff states a cognizable claim against
9 Defendants D. Huckabay, R. Milan, J.M. Mattingly, Franco, Soares, M. Jiminez, T. Bullock, K. Witt,
10 D. Rose, Carminati, White, Deathridge, Galvan, and Scott.

### 2. **Inadequate Medical Care**

12 Plaintiff complains that PVSP prison officials did not provide Plaintiff with adequate medical
13 treatment when Plaintiff was placed in administrative segregation after the attack. "[D]eliberate
14 indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle,
15 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment,
16 a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the
17 defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439
18 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to
19 treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton
20 infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful
21 act or failure to respond to a prisoner's pain or possible medical need and harm caused by the
22 indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of
23 harm and the defendant must have subjective awareness of that harm. Id. However, "a complaint
24 that a physician has been negligent in diagnosing or treating a medical condition does not state a
25 valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not
26 become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429
27 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to
28 ///

serious medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Plaintiff presents no facts that suggest that the failure to provide some form of medical treatment within the six days after Plaintiff was attacked led Plaintiff to suffer further significant injury. Plaintiff does not identify what treatment he should have received and what further significant injury he sustained (or was at risk of sustaining) because he did not receive treatment earlier.

Plaintiff alleges that licensed vocational nurses Hall and Carr examined Plaintiff after the attack. Plaintiff complains that his numerous injuries were blatantly ignored. However, Plaintiff fails to establish how Hall or Carr's responses were deliberately indifferent. Aside from failing to identify what sort of treatment he should have received, Plaintiff fails to demonstrate that Hall and Carr were aware that their failure to intervene would mean that Plaintiff would not receive treatment elsewhere. Plaintiff attempts to hold Hall and Carr liable for their failure to act by contending that Hall and/or Carr should have done something to ensure that Plaintiff was seen by a doctor or received treatment. However, an official's failure to act will only constitute deliberate indifference if they had actual knowledge that their failure to act would lead to further serious injury or the unnecessary and wanton infliction of pain. Plaintiff does not allege that he made a request to Hall or Carr for medical treatment and that Hall or Carr denied that request. Plaintiff attempts to hold Hall and Carr liable on the theory that they saw Plaintiff's injuries and should have known that Plaintiff needed medical attention. However, while observing Plaintiff's injuries may have put Hall and Carr on notice that Plaintiff should receive medical treatment, Plaintiff does not allege that Hall or Carr were responsible for providing that treatment, or that they knew Plaintiff was not going to receive treatment from the official who was responsible for providing the treatment. Plaintiff only alleges that Hall and Carr were responsible for documenting Plaintiff's injury in a report. Nothing in Plaintiff's complaint suggests that Hall or Carr had actual knowledge that Plaintiff would not be able to obtain medical treatment on his own, and that if they did not intervene, Plaintiff would suffer further injury. Accordingly, Plaintiff fails to state any cognizable claim against Hall or Carr for deliberate indifference toward Plaintiff's medical needs.

1    In the Court's previous screening order, Plaintiff was provided with the relevant legal
2 standards for stating a claim under the Eighth Amendment for deliberate indifference toward a
3 prisoner's serious medical needs. (Order Requiring Pl. Either to Notify Court of Willingness to
4 Proceed Only on Claims Found to be Cognizable or File Third Am. Compl. 4:19-5:8, 6:10-22.)
5 Plaintiff was also specifically informed of the deficiencies in his medical care claims. (Order
6 Requiring Pl. to Notify or File Third Am. Compl. 6:23-7:5.)  Plaintiff has not amended his claims
7 in any way that meaningfully addresses the deficiencies identified by the Court.  Thus, the Court
8 finds that Plaintiff's claims are not capable of being cured by granting further leave to amend.  The
9 Court will dismiss Plaintiff's claims without leave to amend for failing to state a claim upon which
10 relief may be granted under section 1983.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007)
11 (recognizing longstanding rule that leave to amend should be granted even if no request to amend
12 was made unless the court determines that the pleading could not possibly be cured by the allegation
13 of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given
14 leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint
15 could not be cured by amendment).

16              **3.        Other Claims Under the Eighth Amendment**

17    Plaintiff further claims that his rights under the Eighth Amendment were violated because
18 Defendants filed false reports regarding the September 7, 2005 incident. Plaintiff does not provide
19 any details on how the reports were false.  Further, it is unclear how the filing of a false report in and
20 of itself can be characterized as the denial of "the minimal civilized measure of life's necessities"
21 because Plaintiff fails to explain how the false reports adversely affected him. The filing of the false
22 reports occurred after the attack.  Therefore, the false reports cannot be said to have caused or
23 contributed to the unconstitutional use of excessive force.  Accordingly, Plaintiff fails to state any
24 cognizable claims against any Defendants for the filing of any false reports.

25    In the Court's previous screening order, Plaintiff was specifically informed of the deficiencies
26 in his claims based on the filing of false reports. (Order Requiring Pl. to Notify or File Third Am.
27 Compl. 6:4-9.)  Plaintiff has not amended his claims in any way that meaningfully addresses the
28 deficiencies identified by the Court. Thus, the Court finds that Plaintiff's claims are not capable of

being cured by granting further leave to amend. The Court will dismiss Plaintiff's claims without leave to amend for failing to state a claim upon which relief may be granted under section 1983. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

### B. Fourteenth Amendment Claims

#### 1. Due Process

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

The specific nature of Plaintiff's due process claim is unclear. Plaintiff does not specifically identify any liberty interest that is at stake. Plaintiff only vaguely concludes that Defendants' actions violated his due process rights. While Plaintiff's right to be free from the unnecessary and wanton infliction of bodily harm is certainly protected under the Constitution, that right is more explicitly protected under the Eighth Amendment. Plaintiff does not have a duplicative claim under the

Fourteenth Amendment for the use of excessive force. See Whitley v. Albers, 475 U.S. 312, 327 (1986) ("the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified" and "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.") Plaintiff's claims will therefore be construed under the Eighth Amendment, and not under the Fourteenth Amendment.

Plaintiff's claims regarding the filing of false reports do not rise to the level of a due process violation. Plaintiff provides no explanation as to how the false reports harmed him. The reports were made and filed after Plaintiff was attacked and the harm had already occurred. Thus, the Court finds that Plaintiff has failed to demonstrate that the false reports constitute an "atypical and significant hardship." Thus, Plaintiff fails to state any cognizable due process claims.

In the Court's previous screening order, Plaintiff was given the relevant legal standards for stating due process claims and specifically informed of the deficiencies in his due process claims. (Order Requiring Pl. to Notify or File Third Am. Compl. 7:22-8:14.) Plaintiff has not amended his claims in any way that meaningfully addresses the deficiencies identified by the Court. Thus, the Court finds that Plaintiff's claims are not capable of being cured by granting further leave to amend. The Court will dismiss Plaintiff's claims without leave to amend for failing to state a claim upon which relief may be granted under section 1983. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

**2.     Equal Protection**

Plaintiff claims that Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally

1  discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee
2  v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the
3  Plaintiff must show that the Defendants' actions were a result of the Plaintiff's membership in a
4  suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).
5  "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from
6  invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

7  Plaintiff contends that the brutal attack was racially motivated based on comments made by
8  Defendants during the attack about Plaintiff's Native American heritage. Plaintiff's sole description
9  of Defendants' race-based statements is his allegation that Huckabay said "This fucking India[sic]
10  likes to assault staff. .[sic] Beat his fuckin' ass!" (Compl. ¶ 43.) Plaintiff's allegations fail to
11  plausibly suggest that the attack was racially motivated. Nothing from Huckabay's statement can
12  be said to plausibly imply that Plaintiff was being attacked because he was Native American.
13  Plaintiff must support his equal protection claim with more than labels and conclusions and the
14  formulaic recitation of legal standards. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The
15  facts alleged in Plaintiff's complaint suggest that Defendants brutally attacked Plaintiff because
16  Plaintiff accidently struck a correctional officer. Plaintiff has alleged nothing that suggests that
17  Defendants attacked Plaintiff because he was a Native American. Accordingly, Plaintiff fails to state
18  any cognizable equal protection claims.

19  In the Court's previous screening order, Plaintiff was given the relevant legal standards for
20  stating equal protection claims. (Order Requiring Pl. to Notify or File Third Am. Compl. 7:12-21.)
21  Plaintiff has not amended his claims in any way that meaningfully incorporates the legal standards
22  provided by the Court. Thus, the Court finds that Plaintiff's claims are not capable of being cured
23  by granting further leave to amend. The Court will dismiss Plaintiff's claims without leave to amend
24  for failing to state a claim upon which relief may be granted under section 1983. See Lopez v.
25  Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend
26  should be granted even if no request to amend was made unless the court determines that the
27  pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d
28  ///

1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

### C. First Amendment Claims

Plaintiff claims that his rights under the First Amendment were violated by Defendants. However, it is unclear how Plaintiff's allegations implicate any of his First Amendment rights. Under the section entitled "Violation of the First Amendment of the Constitution of the United States," Plaintiff states that Defendants "either heard racial based statement made by Sgt. Huckabay," or "were specifically informed by plaintiff of the racial statements." Plaintiff complains that Defendants then "covered them up." Plaintiff concludes that the beating was "fueled by and through the imbued racism which was verbally expressed by a few during the beatings as plaintiff was/is and know[sic] and recognized Native American."

The First Amendment provides that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Plaintiff's allegations do not implicate any of the rights guaranteed under the First Amendment. Plaintiff's complaints regarding the racially motivated nature of Defendants' actions are more properly addressed as claims arising under the Equal Protection Clause of the Fourteenth Amendment. See discussion supra Part III.B.2. Accordingly, Plaintiff's complaint fails to state any cognizable claims based on the infringement of his rights under the First Amendment.

### D. State Law Claims

Plaintiff asks the Court to exercise supplemental jurisdiction over his state law claims. It is unclear what Plaintiff's state law claims are, as Plaintiff only specifically enumerates violations of his rights under the U.S. Constitution. Plaintiff does reference several criminal statutes and alleges that Defendants violated these criminal statutes. When a criminal statute is violated, the question of whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the discretion of the prosecutor, not the Court. United States v. Batchelder, 442 U.S. 114, 124 (1979); see Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375 (2d Cir. 1973)

(prosecution of state officials for alleged violation of inmates' federal civil rights is for discretion of U.S. Attorney). Criminal statutes generally do not provide a private cause of action or a basis for civil liability. See, e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241 and 242 provide no private right of action and cannot form basis for civil suit); Pawelek v. Paramount Studios Corp., 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (no private cause of action inherent in federal criminal statutes defining civil rights violations).  Plaintiff fails to state any cognizable state law claims based on Defendants' alleged violation of California criminal statutes.

In the Court's previous screening order, Plaintiff was specifically informed that the violation of a criminal statute does not generally give rise to a civil cause of action.  (Order Requiring Pl. to Notify or File Third Am. Compl. 8:17-25.)  Plaintiff has not amended his claims in any way that meaningfully addresses the deficiencies identified by the Court.  Plaintiff presents no argument as to how the violation of the California criminal statutes provides a basis for civil liability.  Thus, the Court finds that Plaintiff's claims are not capable of being cured by granting further leave to amend. The Court will dismiss Plaintiff's claims without leave to amend for failing to state a claim upon which relief may be granted under section 1983.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

**IV.    Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants D. Huckabay, R. Milan, J.M. Mattingly, Franco, Soares, M. Jiminez, T. Bullock, K. Witt, D. Rose, Carminati, White, Deathridge, Galvan, and Scott for the use of excessive force in violation of the Eighth Amendment. However, Plaintiff does not state any other claims.  Plaintiff was provided with the opportunity to amend, and his third amended complaint failed to remedy the deficiencies in his claims.  The Court finds that the deficiencies with Plaintiff's claims are not curable by further amendment of his complaint.  Accordingly, it is HEREBY ORDERED that:

1. This action proceed on Plaintiff's third amended complaint, filed on November 30, 2009, against Defendants D. Huckabay, R. Milan, J.M. Mattingly, Franco, Soares, M. Jiminez, T. Bullock, K. Witt, D. Rose, Carminati, White, Deathridge, Galvan, and Scott for the use of excessive force in violation of the Eighth Amendment; and

2. Plaintiff's Eighth Amendment inadequate medical care claims, Eighth Amendment claims based on the filing of false reports, due process claims, equal protection claims, First Amendment claims, and state law claims are dismissed for failure to state a claim.

IT IS SO ORDERED.

**Dated:   April 21, 2010**                              /s/ Sheila K. Oberto
                                                                   UNITED STATES MAGISTRATE JUDGE