# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID POE, | CASE NO. 1:07-cv–00413-AWI-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING |
| v. | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION |
| SGT. HUCKABAY, et al., | Doc. 96 |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN |
| / | TWENTY-ONE DAYS |

## Findings and Recommendations

### I. Procedural Background

On February 28, 2007, Plaintiff David Poe ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. On November 30, 2009, Plaintiff filed a third amended complaint. Doc. 36. On April 22, 2010, the Court issued a screening order, dismissing certain claims and finding cognizable claims against Defendants[1] D. Huckabay, R. Milam, J.M. Mattingly, Franco, Soares, M. Jimenez, T. Bulock, K. Witt, D. Rose, Carminati, White, Deathriage, Galvan,[2] and Scott ("Defendants") for an Eighth Amendment excessive force. Doc. 41. On February 2, 2011, the Court issued a second informational order, advising Plaintiff that Defendants may file a motion for summary judgment and how Plaintiff must oppose the motion in order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Doc. 70. On September 9, 2011, Defendants filed a motion for summary judgment. Doc. 96. On September 30, 2011, Plaintiff filed an opposition to the motion for summary judgment. Doc. 98. On October 7, 2011, Defendants filed a reply to Plaintiff's opposition. Doc. 99. This matter is deem submitted pursuant to Local Rule 230(l).

---

[1] The names of Defendants Milam, Jimenez, Bulock, and Deathriage were incorrectly spelled in the pleadings and documents filed with the Court. *See* Milam Decl. at 3, Doc. 89; Jimenez Decl., Doc. 96-9; Bulock Answer at 3, Doc. 49; Defs. Mot. Summ. J. at 1, Doc. 96.

[2] On January 9, 2012, the Chief District Judge dismissed Defendant Galvan from this action. *See* Doc. 100.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. Plaintiff's Response to Motion for Summary Judgment

In Plaintiff's response to the motion for summary judgment, Plaintiff simply asserts that he has exhausted his administrative remedies. *See* Pl. Resp. Doc. 98. Plaintiff attaches his inmate appeal from 2006 and alleges that he has not been able to go to the law library in retaliation for filing a lawsuit. *See id.* In response to a motion for summary judgment, a plaintiff cannot simply restate his allegations from the complaint. *See Beard v. Banks*, 548 U.S. 521, 534 (2006) (citing Fed. R. Civ.

1    P. 56(e)). Rule 56(e)(2) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for

2    summary judgment is properly made and supported, an opposing party may not rely merely on

3    allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise

4    provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party

5    does not so respond, summary judgment should, if appropriate, be entered against that party." Fed.

6    R. Civ. P. 56(e). If the moving party's statement of facts are not controverted in this manner, a court

7    may assume that the facts as claimed by the moving party are admitted to exist without controversy.

8    *Beard*, 548 U.S. at 527. The Court "is not required to comb through the record to find some reason

9    to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d

10   1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418

11   (9th Cir.1988)). Instead, the "party opposing summary judgment must direct the Court's attention

12   to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

13   Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes*

14   *v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Therefore, the Court will

15   deem the facts in the record as undisputed.

16                               **IV. Undisputed Facts in the Record**

17           In September 2005, Plaintiff was incarcerated at Pleasant Valley State Prison (PVSP) and

18   was housed on Facility A, Building 1. (Pl. Dep. 9:19-21, 20:10-23, attached as Ex. E to Esquivel

19   Decl.) Plaintiff worked as an evening porter cleaning the housing unit. (Pl. Dep. 21:6-20.) Around

20   6:55 p.m. on September 7, 2005, Plaintiff started drinking pruno—inmate manufactured alcohol. (Pl.

21   Dep. 39:7-40:12; Esquivel Decl. Ex. B, 2, 12.) By the time Plaintiff was released from his cell for

22   work between 7:20 to 7:40 p.m., he had drunk three nineteen-ounce jars of pruno. (Pl. Dep.

23   40:13-41:6, 45:24-46:12.) Plaintiff was light headed; he was staggering; and his speech was slurred.

24   While he worked, he used the broom to steady and hold himself up. (Pl. Dep. 41:7-18.) 6. On

25   September 7, 2005, Plaintiff was on pain medication for a knee condition, and medical staff told him

26   not to drink alcohol while taking his medication. (Pl. Dep. 44:19-45:23.) Plaintiff took pain

27   medication around 2 p.m. that day. (*Id.*)

28           When Plaintiff exited his cell, inmate Jewette approached him with a bag of Pruno. (Pl. Dep.

61:12-62:7, 62:24-63:10.) Plaintiff ordered Jewette to get away from him because Plaintiff did not want the housing officers to know that he was drunk. (*Id.*) At approximately 8 p.m., the control booth officer noticed the bag Jewette was carrying and ordered him to report to the middle of the day room. (Esquivel Decl. Ex. B, 12.) The housing officers, Do and Fountain, inspected the bag and found pruno. (Esquivel Decl. Ex. B, 5.) As Fountain and Do escorted Jewette back to his cell and were passing by Plaintiff, Plaintiff punched Fountain in the face with a closed fist. (Esquivel Decl. Ex. B, 5; Pl. Dep. 49:5-20.) Just before Plaintiff hit Fountain, Plaintiff admitted he was drunk and not in the "right frame of mind." (Pl. Dep. 48:12-16.) After striking Fountain, Plaintiff took a few steps back from the officer and stood with his fists clenched at his sides facing the officers. (Esquivel Decl. Ex. B, 5.)

The control booth officer sounded the alarm, and Do ordered Plaintiff to the ground, but he did not comply with the order. (Esquivel Decl. Ex. B, 5, 12.) Both Do and Fountain drew their batons and again ordered Plaintiff to the ground. (*Id.*) Plaintiff complied with the second order to get down, proned out, and the officers took control of Plaintiff's arms. (Esquivel Decl. Ex. B, 5.) Sergeant Huckabay and Defendant officer Milam responded to the scene and saw Plaintiff resisting the officers' efforts to restrain him. (Huckabay Decl. ¶ 4; Milam Decl. ¶ 4.) Defendant Milam relieved Fountain and assisted Do, but he could not apply the handcuffs because Plaintiff was resisting despite repeated orders to stop. (Milam Decl. ¶ 5.) Defendant Milam was eventually able to secure the handcuffs on Plaintiff. (*Id.*) Defendant Huckabay ordered Defendant officer Soares and Fountain to handcuff Jewette. (Huckabay Decl. ¶ 5; Soares Decl. ¶¶ 4-6.)

Defendant Huckabay ordered Defendant Milam and Defendant officer Franco to escort Plaintiff to the medical clinic and for Defendant Soares and Defendant officer Jimenez to escort Jewette to a holding cell in the Program Office. (Huckabay Decl. ¶ 7; Soares Decl. ¶ 6; Jimenez Decl. ¶¶ 3-6; Milam Decl. ¶ 6; Franco Decl. ¶ 5.) Defendant Huckabay noticed that Fountain was bleeding from the mouth and ordered him to report to the clinic for treatment. (Huckabay Decl. ¶ 6.) Defendants Soares and Jimenez escorted Jewette to the Program Office without incident. (Jimenez Decl. ¶¶ 7-9; Soares Decl. ¶¶ 7-8.) Neither Defendants Jimenez or Soares assisted in restraining Plaintiff or in escorting him to the medical clinic. (*Id.*) Defendants Franco and Milam assisted

Plaintiff to his feet, and informed him that they were taking him to the medical clinic. (Franco Decl. ¶ 6; Milam Decl. ¶ 7.) Plaintiff responded with profanities. (*Id.*)

As Defendants Franco and Milam started to escort Plaintiff towards the exit, Plaintiff dragged his feet and used his body weight in a downward motion. (Franco Decl. ¶ 7; Milam Decl. ¶ 7.) The officers gave him repeated orders to stop his resistive behavior, but Plaintiff did not comply. (*Id.*) Defendants Franco and Milam held Plaintiff by his underarm area to keep him upright. (*Id.*) Plaintiff appeared drunk, he smelled of alcohol, was stumbling, and slurring his speech. (Huckabay Decl. ¶ 8; Milam Decl. ¶ 8.) As Plaintiff was taken towards the exit, Defendant officer Carminati arrived at Building 1. (Carminati ¶¶ 2-4.) He noticed that the officers had control of the situation, and he reported to the office in the housing unit. (*Id.*) Plaintiff continued to drag his feet and twisted his body side to side as the escort entered the sally port area of the housing unit despite repeated orders to stop his resistive behavior. (Milam Decl. ¶ 9; Franco Decl. ¶ 8; Huckabay Decl. ¶ 9.) Plaintiff then kicked his left leg back and struck Defendant Franco in the right leg, causing Franco to trip and fall. (Franco Decl. ¶¶ 8-9; Milam Decl. ¶ 10; Huckabay Decl. ¶ 10.) Plaintiff also fell and landed on top of Defendant Franco, and Defendant Milam fell into the sally port wall and landed on top of Plaintiff. (*Id.*)

On the ground, Plaintiff thrashed around and head butted Defendant Franco several times in the chest area and struck the sally port wall. (Franco Decl. ¶ 10; Milam Decl. ¶¶ 11-12; Huckabay Decl. ¶ 11.) He also kicked his legs and struck Defendant Milam several times. (*Id.*) To stop Plaintiff's combative behavior, Defendant Milam held Plaintiff's head down to the ground, Defendant Franco held down his torso, and Defendant Huckabay restrained his legs until he applied leg restraints on Plaintiff. (Huckabay Decl. ¶¶ 12-13; Franco Decl. ¶¶ 11-12; Milam ¶¶ 13-14.) Defendant Huckabay ordered that Plaintiff be placed on a gurney before resuming the escort. (Huckabay ¶ 14.) As the officers waited for the gurney, Defendant Carminati entered the sally port area, saw Plaintiff on the ground, noticed the situation was under control, and exited the building. (Carminati Decl. ¶¶ 6-7, 9.) Defendant Carminati did not see any officer use force on Plaintiff, and he had no physical contact with Plaintiff. (*Id.*)

Plaintiff was placed on the gurney, and Defendants Huckabay, Milam, Franco, and Defendant

officers Rose and Witt carried the gurney to the medical clinic without incident. (Huckabay ¶ 15; Franco Decl. ¶ 14; Milam Decl. ¶ 16; Rose Decl. ¶¶ 3-6; Witt Decl. ¶¶ 3-6.) Once Plaintiff was placed inside the medical clinic, Defendants Franco, Milam, and Witt had no further interaction with Plaintiff on September 7, 2005. (Franco Decl. ¶ 14; Milam Decl. ¶ 16; Witt Decl. ¶ 6.) When Defendant Lieutenant Scott responded to the incident, she did not see any inmates in the area. (Scott Decl. ¶¶ 3-5; Bulock Decl. ¶¶ 2-5.) She saw Fountain's facial injuries and ordered that he be taken to the prison's hospital and instructed the officer at the hospital to photograph Fountain's injuries. (*Id.*)

At 8:15 p.m., medical staff examined Plaintiff and noted that he had an injury above the right eye, back of the head, and left side of his mouth. (Esquivel Decl. Ex. B, 15.) Plaintiff was also administered a sobriety exam. (Esquivel Decl. Ex. B, 20.) He was lethargic and confused; his eyes were bloodshot and dilated; he was staggering; his speech was slurred; he was abusive; and he smelled of alcohol. (*Id.*) Around 8:30 p.m., Defendant Huckabay conducted a use-of-force interview with Plaintiff in the medical clinic, and Defendant Soares operated the camera. (Huckabay Decl. ¶¶ 16-17; Soares Decl. ¶¶ 9-10.) During the interview, Plaintiff smelled of alcohol, and he was slurring his speech. (Soares Decl. ¶ 11.) Around 9:15 p.m., Defendant Carminati served Plaintiff with a lock-up order and informed Plaintiff that he was going to administrative segregation. (Carminati Decl. ¶¶ 8-9; Esquivel Decl. Ex. B, 21.) Defendant Carminati had no further contact with Plaintiff. (*Id.*) About fifteen minutes later, Defendant Rose read Plaintiff his *Miranda* rights, and Defendant Soares witnessed the reading. (Rose Decl. ¶ 7; Soares Decl. ¶ 12; Esquivel Decl. Ex. B, 22.) Neither officer had any further contact with Plaintiff. (*Id.*) Defendant Huckabay remained with Plaintiff during the escort to the administrative segregation building, and then had no further contact with Plaintiff. (Huckabay Decl. ¶ 18.)

When Plaintiff arrived in administrative segregation around 10:15 p.m., he was still drunk, staggering, and feeling the effects of the alcohol. (Pl. Dep. 117:6-10, 125:20-126:7.) Around 11 p.m., medical staff in administrative segregation examined Plaintiff, and noted that he had a bruised/swollen right eye and dry blood around his nose and mouth area and on the back of the head. (Esquivel Decl. Ex. B, 23.) As a result of the incident with Plaintiff, Defendant Franco sustained

injuries to his left elbow and knee, and Defendant Milam injured his right forearm. (Franco Decl. ¶ 15; Milam Decl. ¶ 17.)

On September 7, 2005, the date of the incident, Defendant Bulock was assigned to the Correctional Treatment Center, the prison's hospital, and did not respond to the incident involving Plaintiff on Facility A. (Bulock Decl. ¶¶ 2-3, 7; Esquivel Decl. Ex. A.) Defendant Deathriage was a yard officer on Facility B, and he was required to stay on that yard and did not respond to the incident involving Plaintiff on Facility A. (Deathriage Decl. ¶¶ 2-4.) Defendant Mattingly was the Associate Warden of Facility A, and he did not respond to the incident, and he had no knowledge of the events involving Plaintiff. (Mattingly Decl. ¶¶ 1-8; Esquivel Decl. Ex. C.) Defendant White was working in the Watch Office at PVSP, and did not respond to the incident involving Plaintiff on Facility A. (White Decl. ¶¶ 1-3; Esquivel Decl. Ex. A.) Defendants Huckabay, Milam, Franco, Rose, and Witt did not hit, punch, kick, or strike Plaintiff. (Huckabay Decl. ¶ 19; Franco Decl. ¶ 16; Milam Decl. ¶ 18; Rose Decl. ¶ 8; Witt Decl. ¶ 7; Jimenez Decl. ¶ 10.) Defendants Huckabay, Franco, and Milam did not use any more force than was necessary to restrain and gain control of Plaintiff and to stop or prevent his attacks on staff. (Huckabay Decl. ¶¶ 20-21; Franco Decl. ¶¶ 17-18; Milam Decl. ¶¶ 19-20 ; Rose Decl. ¶ 9; Witt Decl. ¶ 8; Soares Decl. ¶ 14.) Defendants Rose and Witt did not use any more force than necessary to lift and carry the gurney to the medical clinic. (Rose Decl. ¶ 9; Witt Decl. ¶ 7; Franco Decl. ¶ 19; Milam Decl. ¶ 21; Huckabay ¶ 22.) Bulock, Carminati, Deathriage, Jimenez, Mattingly, Scott, Soares, and White had no physical contact with Plaintiff on September 7, 2005. (Bulock Decl. ¶¶ 4-7; Carminati Decl. ¶¶ 9-11; Deathriage Decl. ¶¶ 4-6; Jimenez Decl. ¶¶ 6-9; Mattingly Decl. ¶ 3; Scott Decl. ¶¶ 2-6; Soares Decl. ¶ 13; White Decl. ¶¶ 3-6; Pl.'s Resp. to Req. for Admis. 33, attached as Ex. D to Esquivel Decl.) Plaintiff has no evidence that Defendants Bulock, Carminati, Jimenez, Mattingly, Rose, and White physically touched him on September 7, 2005. (Pl. Dep. 22:11-23:10, 25:1-3, 26:6-18, 27:6-9, 29:22-30:20, 31:14-32:5; Pl. Resp. Req. Admis. 34, 36, 39, attached as Ex. D to Esquivel Decl.)

//

//

//

1

2

## V. Eighth Amendment Excessive Force

### A. Legal Standard

The Eighth Amendment protects prisoners from the use of excessive force. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7; *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Martinez*, 323 F.3d at 1184. In considering these factors, prison authorities "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

//

**B. Analysis**

**1. Defendants Bulock, Carminati, Deathriage, Jimenez, Mattingly, Rose, Scott, Soares, White, and Witt had *De Minimis* Contact or No Physical Contact with Plaintiff**

The record demonstrates that on September 7, 2005, Bulock, Carminati, Deathriage, Jimenez, Mattingly, Scott, Soares, and White did not physically touch Plaintiff. (Bulock Decl. ¶¶ 4-7; Carminati Decl. ¶¶ 9-11; Deathriage Decl. ¶¶ 4-6; Jimenez Decl. ¶¶ 6-9; Mattingly Decl. ¶ 3; Scott Decl. ¶¶ 2-6; Soares Decl. ¶ 13; White Decl. ¶¶ 3-6; Pl. Dep. 22:11-23:10, 25:1-3, 26:6-18, 27:6-9, 29:22-30:20, 31:14-32:5; Pl. Resp. Req. Admis. 33-34, 36, 39, attached as Ex. D to Esquivel Decl.)

Indeed, Bulock, Deathriage, and White were not even working on Facility A that day. (Bulock Decl. ¶¶ 2-3, 7; Esquivel Decl. Ex. A; Deathriage Decl. ¶¶ 2-4; White Decl. ¶¶ 1-3.) As an Associate Warden, Mattingly did not respond to yard alarms. (Mattingly Decl. ¶¶ 1-8; Esquivel Decl. Ex. C.) Jimenez escorted Jewette to the Program Office and did not return to Building 1. (Jimenez Decl. ¶¶ 7-9; Soares Decl. ¶¶ 7-8.) Soares's interaction with Plaintiff was limited to videotaping the use-of-force interview and witnessing Plaintiff being *Mirandized*. (Jimenez Decl. ¶¶ 7-9; Soares Decl. ¶¶ 7-10, 12; Huckabay Decl. ¶¶ 16-17; Rose Decl. ¶ 7.) Carminati served the lock-up order. (Carminati ¶¶ 2-4, 6-9; Esquivel Decl. Ex. B, 21.) Plaintiff admitted that Scott never touched him. (Pl. Resp. Req. Admis. 33, attached as Ex. D to Esquivel Decl.)

The contact by Rose and Witt was *de minimis* because their only involvement in this incident was carrying Plaintiff on the gurney to the medical clinic. (Huckabay ¶ 15; Franco Decl. ¶ 14; Milam Decl. ¶ 16; Rose Decl. ¶¶ 3-6; Witt Decl. ¶¶ 3-6.) Rose and Witt did not have any physical contact with Plaintiff after he was taken to the clinic. (Huckabay ¶ 15; Franco Decl. ¶ 14; Milam Decl. ¶ 16; Rose Decl. ¶¶ 3-7; Witt Decl. ¶¶ 3-6; Soares Decl. ¶ 12; Esquivel Decl. Ex. B, 22). Plaintiff has no evidence that Bulock, Carminati, Jimenez, Mattingly, Rose, and White physically touched him on September 7, 2005. (Pl. Dep. 22:11-23:10, 25:1-3, 26:6-18, 27:6-9, 29:22-30:20, 31:14-32:5; Pl. Resp. Req. Admis. 34, 36, 39, attached as Ex. D to Esquivel Decl.)

Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim for excessive force as it relates to Bulock, Carminati, Deathriage, Jimenez, Mattingly, Rose, Scott, Soares, White, and Witt.

**2. The Use of Force by Defendants Franco, Milam, and Huckabay Complied with the Eighth Amendment**

**(1) Defendants Reasonably Perceived Plaintiff as a Threat**

The *Hudson* factors look at the threat "as reasonably perceived by the responsible officials on the basis of the facts known to them," and the efforts made to temper the situation before the application of force. *Whitley*, 475 U.S. 312, 321. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel, thus prison officials are accorded wide-ranging deference in the adoption and execution of policies and practices that "in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. Here, Plaintiff had punched Fountain with a closed fist, and Plaintiff was visibly and admittedly drunk—having drank more than fifty ounces of alcohol less than an hour before the incident. (Pl. Dep. 39:7-46:12, 48:12-16, 49:5-20; Esquivel Decl. Ex. B, 2, 5, 12; Huckabay Decl. ¶ 8; Milam Decl. ¶ 8.) When Huckabay and Milam arrived at the scene, they saw him resisting staff's efforts to restrain him. (Huckabay Decl. ¶ 4; Milam Decl. ¶ 4.) When Franco and Milam escorted him towards the sally-port area, Plaintiff was verbally abusive, dragging his feet, twisting his body side to side, and resisting and disobeying the officers' orders. (Carminati ¶¶ 2-4; Franco Decl. ¶¶ 6-8; Huckabay Decl. ¶ 8-9; Milam Decl. ¶¶ 7-9.) Without warning, Plaintiff kicked Franco causing Franco to lose his balance and fall to the ground, taking Plaintiff and Milam down with him. (Franco Decl. ¶¶ 8-9; Milam Decl. ¶ 10; Huckabay Decl. ¶ 10.) On the floor, Plaintiff hit Franco repeatedly in the chest area with his head and kicked Milam. (Franco Decl. ¶ 10; Milam Decl. ¶¶ 11-12; Huckabay Decl. ¶ 11.) The officers, with the assistance of Huckabay, regained control of Plaintiff by holding him down to the ground. (Huckabay Decl. ¶¶ 12-13; Franco Decl. ¶¶ 11-12; Milam ¶¶ 13-14.) During the entirety of the escort towards the exit of the housing unit and in the sally port, Defendants reasonably perceived Plaintiff as a continued threat because he was resistive, verbally abusive, drunk, and assaulted Franco and Milam. (Carminati ¶¶ 2-4; Huckabay Decl. ¶¶ 8-13; Franco Decl. ¶¶ 6-12; Milam ¶¶ 7-14.) Plaintiff continued his combative and aggressive behavior despite Defendants' repeated orders to stop resisting. (*Id.*) Given Plaintiff's erratic, assaultive, and volatile behavior, Defendants reasonably perceived him as a threat during the entirety

of the escort into the sally-port area.

**(2) Defendants Used the Minimal Amount of Force Necessary to Subdue Plaintiff**

According to *Hudson*, the Court must assess the need for the application of force and the relationship between the need and amount of force used. *Hudson*, 503 U.S. at 7. The evidence shows that Defendants used reasonable force to restrain Plaintiff. Defendants needed to take control of Plaintiff after he assaulted Franco and Milam by head butting Franco and kicking Milam, and they needed to stop his attack and prevent any further assaults on staff. (Franco Decl. ¶¶ 8-10, 17-18; Milam Decl. ¶¶ 10-12, 19-20; Huckabay Decl. ¶¶ 10-11, 20-21; Rose Decl. ¶ 9; Witt Decl. ¶ 8; Soares Decl. ¶ 14.) To subdue him, Franco pushed Plaintiff away and held his body down; Milam pressed Plaintiff's head to the ground; and Huckabay restrained his legs. (Huckabay Decl. ¶¶ 12-13; Franco Decl. ¶¶ 11-12; Milam ¶¶ 13-14.) They held Plaintiff down until the leg restraints were placed, and then waited for a gurney to finish the escort to the medical clinic. (Carminati Decl. ¶¶ 6-7, 9; Huckabay Decl. ¶¶ 12-14; Franco Decl. ¶¶ 11-12; Milam ¶¶ 13-14.) Defendants did not punch, kick, or strike him. (Huckabay Decl. ¶ 19; Franco Decl. ¶ 16; Milam Decl. ¶ 18; Rose Decl. ¶ 8; Witt Decl. ¶ 7; Jimenez Decl. ¶ 10.) Once Plaintiff was placed on the gurney, Defendants carried him to the clinic without incident, with the assistance of Rose and Witt. (Huckabay ¶ 15; Franco Decl. ¶ 14; Milam Decl. ¶¶ 14, 16; Rose Decl. ¶¶ 3-6; Witt Decl. ¶¶ 3-6.) Defendants' use of force was minimal and necessary to take and maintain control of a combative and resistive inmate.

**(3) Plaintiff's Absence of Serious Injury Demonstrates that Defendants Complied with the Eighth Amendment**

Under *Hudson*, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson*, 503 U.S. at 7. A claim of excessive force under the Eighth Amendment is concerned with the amount of force used, not the nature or severity of the injury inflicted. *Id.*, 503 U.S. at 8-10; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002). Here, Plaintiff sustained minor scrapes, bruises, and abrasions to his face and back of the head. (Esquivel Decl. Ex. B, 15, 20, 23.) Although Plaintiff claims he had swollen, cut, and bruised legs, a broken

jaw, a black eye, and other significant injuries on and around his head, there is no evidence of these injuries. (Pl. 3rd Am. Compl. at 8.) Indeed, both examinations conducted of Plaintiff almost three hours apart showed minor injuries to the head and facial area. (Esquivel Decl. Ex. B, 15, 23.) These injuries were consistent with Defendants' account of what transpired in the sally-port area. Plaintiff's injuries were minor and temporary. The force Defendants used was not applied "maliciously and sadistically" for the purpose of causing Plaintiff injury. Rather, the injuries he sustained were the result of the force used to subdue him. Based on the *Hudson* factors, Franco, Milam, and Huckabay did not use excessive or unreasonable force on Plaintiff. Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim for excessive force as it relates to Franco, Milam, and Huckabay.

## VI. Conclusion and Recommendation

Plaintiff has "failed to point to 'specific facts' in the record that could 'lead a rational trier of fact to find' in his favor. *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e))." *Beard*, 548 U.S. at 535. Accordingly, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the undersigned HEREBY RECOMMENDS that the Court GRANT Defendants' motion for summary judgment and that this action be DISMISSED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21)** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   January 30, 2012  

UNITED STATES MAGISTRATE JUDGE